IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL T. CADDY, | ) | |
| | ) | |
| Petitioner, | ) | 4:03cv3384 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| HAROLD CLARKE, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court for decision on the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 filed by the petitioner, Michael T. Caddy. The petitioner challenges his conviction in the District Court of Buffalo County, Nebraska, of second degree murder and use of a firearm to commit a felony. See generally State v. Caddy, 628 N.W.2d 251 (Neb. 2001).

**BACKGROUND**

On the night of June 9, 1992, at some time before 11:30 p.m., the petitioner and Charles Edwards Burns argued. At least 90 minutes to two hours later, at approximately 1:00 a.m. on June 10, 1992, the petitioner returned to the location of the argument and shot Burns six times, killing him.

**Murder Statutes**

Since 1977, the relevant Nebraska statutes have defined first degree and second degree murder and voluntary and involuntary manslaughter as follows:

Neb. Rev. Stat. § 28-303(1) -- A person commits murder in the first degree if he or she kills another person (1) purposely and with deliberate and premeditated malice.

Neb. Rev. Stat. § 28-304(1) – A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation.

Neb. Rev. Stat. § 28-305(1) – A person commits manslaughter if he kills another without malice, either upon a sudden quarrel [voluntary manslaughter], or causes the death of another unintentionally while in the commission of an unlawful act [involuntary manslaughter].

1

**Malice**

The focus of this habeas corpus case is the petitioner's second degree murder conviction. The petitioner correctly argues, however, that if his murder conviction is infirm, so is the conviction on the firearm offense.

In State v. Burlison, 583 N.W.2d 31 (Neb. 1998), decided after the petitioner's offense and conviction, the Nebraska Supreme Court overruled a line of cases holding that malice constituted an element of second degree murder. The court in Burlison determined that, after revision of Nebraska's homicide statutes in 1977, judicial decisions adding the element of malice to the offense of second degree murder were clearly erroneous and thus should be overturned. Id. at 36. When the petitioner committed his offense (1992), and when he was most recently convicted (1995), the Nebraska courts were still reading malice into Neb. Rev. Stat. § 28-304(1) as an element of second degree murder, and they continued to do so until the decision in State v. Burlison.

For purposes of second degree murder, the Nebraska Supreme Court has explained "malice" as follows:

> In State v. Clermont, ... 284 N.W.2d 412, 415 (1979), this court said: "The essential elements in the crime of murder in the second degree are that the killing be done purposely and maliciously."
>
> We also said in State v. Clermont ... "The elements of malice and intent concern the state of mind of the slayer. Malice, in its legal sense, denotes that condition of mind which is manifested by intentionally doing a wrongful act without just cause or excuse ...." .... Malice means "any willful or corrupt intention of the mind."... This court has also stated that "malice and intent may be inferred from the evidence relating to the circumstances of the criminal act."

State v. Rowe, 335 N.W.2d 309,313 (Neb. 1983).

**Chronology**

The day after the shooting, Deputy County Attorney Donald Miller filed a Complaint in Buffalo County Court charging the petitioner with *first* degree murder and the firearm offense (see BOE, Complaint filed June 11, 1992, Ex. 1 to 11/17/97 proceedings). On July 9, 1992, the petitioner appeared in County Court, waived a preliminary hearing and was bound over on the first degree murder and firearm charges to the district court.

2

The first information filed in the district court opened Case No. 392-395 with a charge of *second* degree murder and the firearm count (see BOE, Information filed-stamped July 9, 1992, Ex. 2 to 11/17/97 proceedings). On July 29, 1992, the petitioner entered his plea of no contest to second degree murder and guilty to the firearm count. On September 15, 1992, he received two consecutive indeterminate prison terms: 25-40 years on Count I (second degree murder) and 5-15 years on Count II (firearm). The petitioner appealed his sentence as excessive, but the Nebraska Court of Appeals (A92-0878) summarily affirmed the judgment.

In April of 1995, the petitioner filed his first postconviction action. He prevailed in the challenge to his murder conviction based on the omission of malice in the information and his attorney's failure to raise that issue. The Buffalo County District Court vacated the conviction and sentence in Case No. 392-395 and ordered a new trial.

Deputy County Attorney Miller then immediately filed a new information opening Case No. CR95-106 with a charge of first degree murder and the firearm count (see BOE, Information dated July 18, 1995, Ex. 5 to 11/17/97 proceedings).[1] However, on October 13, 1995, having lost his plea in bar challenging the charge of first degree murder, the petitioner entered pleas of guilty to a third information charging second degree murder in Count I, and the firearm offense in Count II (see BOE, CR95-106, 10/13/95 proceedings before Hon. John P. Icenogle at 47-62) . On December 15, 1995, the petitioner received the same sentence as before, i.e., consecutive terms of 25-40 years on Count I (second degree murder) and 5-15 years on Count II (firearm), although with credit for time served.

The petitioner appealed to the Nebraska Court of Appeals (A96-077). In an unpublished opinion dated April 3, 1997, the Court of Appeals rejected all of the petitioner's claims except one, i.e., that the trial court had improperly imposed an indeterminate sentence on Count I, whereas only determinate sentences could be rendered for second

---

[1]In filing no. 1 at 4-5, the petitioner states that a second information dated July 20, 1995, identical except for a signature, replaced the July 18 version. Other statements in the record attribute the second information in Case No. CR95-106 to a change in the name of the victim and refer to the date as July 31, 1995. The discrepancy is not material, however, as the petitioner entered a plea to a third information filed on October 13, 1995.

degree murder at the time of the petitioner's offense. The appellate court vacated the sentence and remanded for resentencing.

The petitioner appeared for resentencing on November 17, 1997 (see BOE, CR95-106, 11/17/97 proceedings before Hon. James D. Livingston). He received a new determinate (flat) sentence of 40 years on Count I and a consecutive 5-15 year sentence on Count II.

The petitioner appealed to the Nebraska Court of Appeals (A98-335) from his resentencing. The Nebraska Supreme Court removed the case (S-98-335). However, based on counsel's failure to make timely payment of the docket fee, the appeal was dismissed.

The petitioner countered with a second postconviction action, followed by an appeal to the Nebraska Supreme Court (S-00-291) from the denial of postconviction relief. The appeal resulted in a reported decision, State v. Caddy, 628 N.W.2d 251 (Neb. 2001), granting relief in part on June 22, 2001. The appellate decision concluded:

> The district court erred in determining that Caddy was not entitled to an evidentiary hearing regarding his claim that he was denied effective assistance of counsel on direct appeal from his resentencing. The judgment of the district court is reversed to that extent, and the cause is remanded to the district court with directions to conduct an evidentiary hearing, which is to be limited to the question whether Caddy was denied effective assistance of counsel in that his attorney failed to perfect his direct appeal from his resentencing by filing the required poverty affidavit. Caddy's other assignments of error are without merit, and the judgment of the district court is otherwise affirmed.

Id., 628 N.W.2d at 262. On remand, the district court granted the petitioner a new direct appeal in light of the defective performance by the petitioner's appellate attorney in failing to perfect the original appeal from the resentencing of November 17, 1997. That new appeal became No. S-01-1367 in the Nebraska Supreme Court.

In No. S-01-1367, the Nebraska Supreme Court determined, in an unpublished opinion filed on December 11, 2002, that the district court had failed to advise the petitioner properly during the resentencing on November 17, 1997. The court vacated the sentence, but not the conviction, and remanded for proper resentencing, rejecting all other assignments of error as not properly before the court or without merit.

4

On remand, the petitioner received the flat sentence of 40 years on Count I and the consecutive 5-15 year sentence on Count II that he had previously received on November 17, 1997. His final appeal (S-03-397) from the second resentencing resulted in a summary affirmance of the judgment.

I.

**FACIAL UNCONSTITUTIONALITY -  NEB. REV. STAT. § 28-304(1)**

The petitioner challenges Neb. Rev. Stat. § 28-304(1) as void for vagueness. In City of Chicago v. Morales, 527 U.S. 41 (1999), the U.S. Supreme Court reasoned that a criminal statute may be void for vagueness under two separate rationales. "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory conduct." Id. at 56. The petitioner contends that Neb. Rev. Stat. § 28-304(1) is and was void under the second of those two tests, i.e., because the statute, as written, leads to arbitrary and discriminatory enforcement. The reason why the statute is and was susceptible to arbitrary and discriminatory enforcement, according to the petitioner, is that under certain circumstances, Neb. Rev. Stat. § 28-304(1) cannot be distinguished from the lesser offense of voluntary manslaughter ("sudden quarrel manslaughter").

The hypothetical problem posed by the petitioner arises if a defendant intentionally kills another in the heat of a sudden quarrel, and the prosecutor decides to ignore the quarrel and charges the defendant with second degree murder instead of manslaughter. In those circumstances, the petitioner posits that because the statutory offense of second degree murder omits an element **requiring** the prosecutor to prove the absence of a sudden quarrel, the second degree murder statute contains fatal defects on its face. Those two defects are: (1) prosecutors may arbitrarily choose to charge second degree murder when the offense of sudden quarrel manslaughter, which carries a lesser sentence, would be more appropriate, factually. (2) If a person who intentionally kills another upon a sudden quarrel were to be charged with second degree murder, that defendant would be faced with the burden of having to prove the sudden quarrel to establish that manslaughter, with its lesser sentence, is the appropriate charge.

In other words, every voluntary manslaughter in Nebraska necessarily constitutes

5

a second degree murder under Neb. Rev. Stat. § 28-304(1). Because prosecutors can simply ignore any sudden quarrel, which constitutes the essence of voluntary manslaughter, the necessity of proving a sudden quarrel to escape a conviction for second degree murder unconstitutionally shifts to the defendant. That shift in burden causes defendants to have to convict themselves of manslaughter, thereby violating the Due Process Clause of the Fourteenth Amendment to the U. S. Constitution.

### Neb. Rev. Stat. § 28-304(1) (Without Malice as an Element)
**Mens Rea Elements**

The only elements on the face of Neb. Rev. Stat. § 28-304(1) are "causing death" "intentionally, but without premeditation." State v. Davlin, 719 N.W.2d 243, 255 (Neb. 2006). The intent element requires a finding of specific rather than general intent, i.e., requiring that the defendant *intentionally caused* the death, rather than intentionally set in motion events which ultimately happened to cause a death. Id.

On the other hand, voluntary manslaughter contains no element of intent. "There is no requirement of intention to kill in committing manslaughter. The distinction between second degree murder and manslaughter is the presence or absence of intent to kill." State v. Jackson, 601 N.W.2d 741, 752 (Neb. 1999). "Since our statutes define manslaughter as a killing without malice, there is no requirement of an intention to kill in committing manslaughter. The distinction between second degree murder and manslaughter upon a sudden quarrel is the presence or absence of an intention to kill. State v. Pettit, ... 445 N.W.2d 890 (1989), was incorrect in its reasoning and holding, and to that extent, it is overruled." State v. Jones, 515 N.W.2d 654, 659 (1994), *overruled on other grounds,* State v. Burlison, 583 N.W.2d 31 (1998).

**Burden-Shifting**

A criminal statute may be considered facially invalid only if there exists "no set of circumstances" under which the statute can be applied consistent with the Constitution. See United States v. Salerno, 481 U.S. 739, 745 (1987): "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." Under that standard, Neb. Rev. Stat. § 28-304(1) is not facially unconstitutional. The statute

6

defines the offense of intentionally causing the death of another. On its face, the statute contains no defect.

The U.S. Supreme Court has determined that the Due Process Clause is not implicated when a statutory scheme shifts the burden to a defendant to mitigate the element of intent in second degree murder by establishing that a homicide occurred in the context of a sudden quarrel or an equivalent mental state. In other words, due process is not violated by requiring a defendant to establish the extenuating circumstance of a sudden quarrel. In Patterson v. New York, 432 U.S. 197 (1977), the Supreme Court upheld a New York statute defining second degree murder as Nebraska does, i.e., intentionally causing the death of another. The fact that the statutory scheme shifted the burden to the defendant to prove the mitigating circumstance of severe emotional disturbance did not violate the Due Process Clause.[2]

As in § 28-304(1), "[in Patterson] [t]he crime of murder [was] defined ... as causing the death of another person with intent to do so. The death, the intent to kill, and causation [were] the facts that the State [was] required to prove beyond a reasonable doubt if a person [was] to be convicted of murder. No further facts [were] either presumed or inferred in order to constitute the crime. The statute [did] provide an affirmative defense that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation which, if proved by a preponderance of the evidence, would reduce the crime to manslaughter, an offense defined in a separate section of the statute." Id. at 205-06. The Court "decline[d] to adopt as a constitutional imperative ... that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." Id. at 210. See also Cooper v. Oklahoma, 517 U.S. 348, 367 (1996):

---

[2]The Court noted that "[i]n determining whether New York's allocation to the defendant of proving the mitigating circumstances of severe emotional disturbance is consistent with due process, it is ... relevant to note that this defense is a considerably expanded version of the common-law defense of heat of passion on sudden provocation and that at common law the burden of proving the latter, as well as other affirmative defenses indeed, 'all . . . circumstances of justification, excuse or alleviation' rested on the defendant." Patterson v. New York, 432 U.S. 197, 202 (1977).

7

> In <u>Patterson</u> we upheld New York's requirement that in a prosecution for second-degree murder the defendant must bear the burden of proving the affirmative defense of extreme emotional disturbance in order to reduce the crime to manslaughter .... After observing that the rule was consistent with common-law practice ..., we held that "[t]he Due Process Clause ... does not put New York to the choice of abandoning [statutory] defenses or undertaking to disprove their existence in order to convict of a crime which otherwise is within its constitutional powers to sanction by substantial punishment," ....

In Nebraska, "sudden quarrel" is not an affirmative defense to second degree murder. Instead, if a defendant charged with second degree murder establishes the sudden quarrel, an entitlement arises to an instruction on the lesser-included offense of manslaughter. <u>State v. Hardin</u>, 326 N.W.2d 38, 41 (Neb. 1982) (where murder is charged and the record contains some evidence tending to show manslaughter rather than murder, the court must, even without request, charge the jury on such lesser degrees of homicide as to which the evidence is properly applicable). Accord <u>State v. Archbold</u>, 350 N.W.2d 500, 504 (Neb.1984).

The petitioner correctly argues that the burden to prove the elements of an offense always rests with the prosecution and cannot be shifted to a defendant. However, the line of demarcation is not easy to explain. The burden to establish factual circumstances which admit an element (e.g. mens rea), but offer an excuse, or a mitigating or extenuating circumstance, may indeed be allocated to a defendant. See, e.g., the discussion of <u>Patterson</u> in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 252 (1998):

> [W]e upheld in <u>Patterson</u> New York's law casting upon the defendant the burden of proving as an "affirmative defense" to second-degree murder that he " 'acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse,' " ... which defense would reduce his crime to manslaughter. We explained that "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required," ..., and that the State need not "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as **an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment.**"... We cautioned, however, that while our decision might "seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes [,] ... there are obviously constitutional limits beyond which the States may not go in this regard."

8

(Emphasis added.)

Thus, pursuant to the decision in Patterson v. New York, at least when malice is not an element of an offense, the State is not required by the Due Process Clause to prove the absence of a sudden quarrel (or severe emotional disturbance) to obtain a valid conviction for second degree murder. The Constitution is not violated by the circumstance raised by the petitioner, i.e., that a defendant may be placed in the position of having to establish the provocation of a sudden quarrel which would mitigate an offense of second degree murder to voluntary manslaughter. See also United States v. Leal-Cruz, 431 F.3d 667, 670-71 (9th Cir. 2005) (holding that the district court did not err in requiring the defendant to prove duress): "[T]he Due Process Clause forbids shifting the burden of proof to the defendant on an issue only where establishing the defense would **necessarily negate an element** that the prosecution must prove beyond a reasonable doubt...."[3]

---

[3] See also Martin v. Ohio, 480 U.S. 228, 231-34 (1987) (holding that a state may require the defendant to bear the burden of proof on the issue of self-defense): "In re Winship, 397 U.S. 358, 364 ... (1970), declared that the Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' A few years later, we held that Winship's mandate was fully satisfied where the State of New York had proved beyond reasonable doubt each of the elements of murder, but placed on the defendant the burden of proving the affirmative defense of extreme emotional disturbance, which, if proved, would have reduced the crime from murder to manslaughter. Patterson v. New York, *supra*.... We are thus not moved by assertions that the elements of aggravated murder and self-defense overlap in the sense that evidence to prove the latter will often tend to negate the former. It may be that most encounters in which self-defense is claimed arise suddenly and involve no prior plan or specific purpose to take life. In those cases, evidence offered to support the defense may negate a purposeful killing by prior calculation and design, but Ohio does not shift to the defendant the burden of disproving any **element** of the state's case. When the prosecution has made out a prima facie case and survives a motion to acquit, the jury may nevertheless not convict if the evidence offered by the defendant raises any reasonable doubt about the existence of any fact necessary for the finding of guilt." (Emphasis added.)

9

### Neb. Rev. Stat. § 28-304(1) (With Malice as an Element)

The petitioner has been twice convicted of second degree murder, first in 1992 without reference to an element of malice, and second in 1995 with the addition of malice as an element of the offense. The U.S. Supreme Court has not decided whether shifting the burden to a defendant of proving extreme emotional distress, sudden quarrel, or similar state of mind would unconstitutionally force a defendant to "negate" (i.e., disprove) malice in an offense for which malice is a statutory element to be proved by the prosecution. However, in Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court, in dicta, indicated the possibility that a shift to a defendant of the burden of proving extreme emotional disturbance, notwithstanding the decision in Patterson, might be unacceptable when malice constitutes an element of an offense.

> In upholding a New York law allowing defendants to raise and prove extreme emotional distress as an affirmative defense to murder, Patterson made clear that the state law still required the State to prove every element of that State's offense of murder and its accompanying punishment. "No further facts are either presumed or inferred in order to constitute the crime." 432 U.S., at 205-206 .... **New York, unlike Maine, had not made malice aforethought, or any described mens rea, part of its statutory definition of second-degree murder**; **one could tell from the face of the statute that if one intended to cause the death of another person and did cause that death, one could be subject to sentence for a second-degree offense**. Id., at 198 .... Responding to the argument that our view could be seen "to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes," the Court made clear in the very next breath that there were "obviously constitutional limits beyond which the States may not go in this regard." Id., at 210 ....

Apprendi v. New Jersey, 530 U.S. at 485 (emphasis added). Nevertheless, the petitioner's challenge to the second degree murder statute as judicially interpreted to contain the element of malice when he committed his offense and when he was convicted in 1995 fails for a variety of reasons, as discussed next.

### Standing

Under state law, the Nebraska Supreme Court has held that "[b]efore we can address the merits of [a defendant's] claim, we must first determine whether he has standing to challenge the constitutionality of the statute on vagueness grounds .... To have

10

standing to assert a claim of vagueness, a defendant must not have engaged in conduct which is clearly prohibited by the questioned statute and cannot maintain that the statute is vague when applied to the conduct of others .... The test for standing to assert a vagueness challenge is the same whether the challenge asserted is facial or as applied." State v. VanAckeren, 639 N.W.2d 112, 116-17 (Neb. 2002). Accord Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982) ("'One to whose conduct a statute clearly applies may not successfully challenge it for vagueness'"), *quoting* Parker v. Levy, 417 U.S. 733, 756 (1974).

As the respondent points out, the facts of this case are wholly inconsistent with a charge under Neb. Rev. Stat. § 28-305(1) of voluntary manslaughter, i.e., causing death "upon a sudden quarrel." Therefore, whether or not Nebraska's second degree murder statute could have been abused in a particular case, the statute was not abused in the petitioner's situation, as the crime simply did not occur in the context of a sudden quarrel. The petitioner was convicted of returning to shoot the victim 90 minutes to two hours after an argument. Thus, at most, Neb. Rev. Stat. § 28-304(1) might have been susceptible to improper application in other circumstances during 1992-95, but the statute was not unconstitutional as applied to the petitioner. He therefore lacks standing to challenge the facial validity of the statute or its constitutionality as applied to others.

**Waiver**

In the decision of April 3, 1997 (Case No. A96-077), the Nebraska Court of Appeals responded to the petitioner's assigned error that "the amended information improperly included the element of malice." The appellate court noted that the "assigned error does not challenge the insufficiency of the information but, rather, alleges that the information improperly contained an additional element not required by the statute." State v. Caddy, No. A96-077, slip op. at 3 (Neb. Ct. App. Apr. 3, 1997).

Moreover, as the court pointed out, the information in the petitioner's second criminal case (No. CR95-106) alleged second degree murder with the additional element of malice because of the petitioner's success in his first postconviction action, challenging the omission of malice from the murder charge. "Of course, Caddy's motion for postconviction relief was granted in the first place, and he was retried by virtue of the State's failure to

11

include the malice element in the original information during the first trial." Id. Therefore, whether characterized as waiver or estoppel, the petitioner, having expressly invited the addition of malice into the information to which he pled guilty in 1995, should not now be heard to complain about the additional element.

**Apprendi**

The petitioner, approaching facial unconstitutionality in a slightly different manner, argues in his brief on the merits (filing no. 33 at 5), that he "gets the benefit" of the U.S. Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). He points out that the Supreme Court decided Apprendi before the opinion in August of 2003 in the petitioner's fifth direct appeal. However, for two reasons, Apprendi does not assist the petitioner.

First, even if Apprendi applied to Neb. Rev. Stat. § 28-304(1), an Apprendi claim may not be raised and applied retroactively to cases on collateral review. See, e.g., Sexton v. Kemna, 278 F.3d 808, 814 n.5 (8th Cir.), cert. denied, 537 U.S. 886 (2002) (state prisoner § 2254 habeas corpus petition). Accord Dellinger v. Bowen, 301 F.3d 758, 765 (7th Cir. 2002), cert. denied, 537 U.S. 1214 (2003); Reynolds v. Cambra, 290 F.3d 1029, 1030 (9th Cir. 2002); Burch v. Corcoran, 273 F.3d 577, 584 (4th Cir. 2001), cert. denied, 535 U.S. 1104 (2002) (same). See also United States v. Ayala, 313 F.3d 1068, 1069-70 (8th Cir. 2002), cert. denied, 540 U.S. 852 (2003); Jarrett v. United States, 266 F.3d 789, 791 (8th Cir. 2001), cert. denied, 535 U.S. 1007 (2002); United States v. Moss, 252 F.3d 993, 997 (8th Cir. 2001), cert. denied, 534 U.S. 1097 (2002) (federal prisoner § 2255 motions to vacate sentence). Consequently, the petitioner's collateral attack on his conviction and sentence based on Apprendi must be denied.

Second, the petitioner did not receive a sentence in excess of the statutory maximum for the offense of conviction (second degree murder). Therefore, he did not face the issue addressed in Apprendi. As the Supreme Court explained in a case decided after Apprendi,

> Since sentencing ranges came into use, defendants have not been able to predict from the face of the indictment precisely what their sentence will be; the charged facts have simply made them aware of the "heaviest punishment" they face if convicted ....

12

> At issue in Apprendi, by contrast, was a sentencing factor that did "swell the penalty above what the law has provided," ... and thus functioned more like a "traditional elemen[t]." Patterson v. New York, 432 U.S., at 211, n. 12.... The defendant had been convicted of illegal possession of a firearm, an offense for which New Jersey law prescribed a maximum of 10 years in prison .... He was sentenced to 12 years, however, because a separate statute permitted an enhancement when the judge found, by a preponderance of the evidence, that the defendant "acted with a purpose to intimidate an individual or group of individuals because of race."

The Court held that the enhancement was unconstitutional. "[O]ur cases in this area, and ... the history upon which they rely," the Court observed, confirmed the constitutional principle ... [that]: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S., at 490....

Harris v. United States, 536 U.S. 545, 562-63 (2002).

Apprendi limits judicial, not prosecutorial, discretion. Thus, insofar as the petitioner believes Apprendi purports to direct prosecutors to charge an offender with the offense having the lowest maximum sentence which the facts would support within the applicable criminal code, he misreads the decision. The decision in Apprendi curtails *sentencing* discretion by requiring that any fact, other than a prior conviction, which would enhance a sentence above the lowest statutory maximum must be charged, submitted to the jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 469. See also United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000), *citing* Apprendi: "[I]f the government wishes to seek penalties in excess of those applicable by virtue of the elements of the offense alone, then the government must charge the facts giving rise to the increased sentence in the indictment, and must prove those facts to the jury beyond a reasonable doubt."

In summary, the petitioner has not established that Neb. Rev. Stat. § 28-304(1) is facially unconstitutional. In addition, the petitioner is foreclosed from challenging the constitutionality of § 28-304(1) as interpreted in 1995.

13

II.

## PROSECUTORIAL VINDICTIVENESS

The petitioner next claims that by charging him with first degree murder in Case No. CR95-106, the prosecutor vindictively retaliated against him for prevailing in his first postconviction action and illegally coerced him to plead guilty to second degree murder in 1995.  Of course, it is likely that the petitioner, rather than risk conviction for first degree murder, chose to plead guilty to the lesser charge of second degree murder.  However, a decision not to risk conviction of a greater charge does not render a plea to a lesser charge coerced or involuntary if the prosecutor could legally charge the greater offense in the circumstances.

The leading case on prosecutorial vindictiveness is Blackledge v. Perry, 417 U.S. 21 (1974).  In Blackledge, after the defendant successfully asserted his right to a trial de novo on a misdemeanor charge of assault with a deadly weapon, the prosecutor obtained a superseding indictment charging the defendant with the felony offense of assault with a deadly weapon with intent to kill, rather than the previous misdemeanor.  Both the original misdemeanor and the subsequent felony were based on the same fight between the defendant and the person allegedly assaulted. The Supreme Court stated:  "A person convicted of an offense is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential of incarceration. Due process of law requires that such a potential for vindictiveness must not enter into [the State's] two-tiered appellate process.  We hold, therefore, that it was not constitutionally permissible for the State to respond to [the defendant's] invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial de novo."

However, prosecutorial vindictiveness requires a causal relationship between the defendant's exercise of a right and the prosecutor's charging decision.  "The 'retaliation' barred by the Due Process Clause ... exists only where the government would not have exercised its charging authority 'but for' the defendant's exercise of his rights.  Only where the government's actions can be traced solely to the defendant's exercise of his rights can the requisite causal connection be established."  United States v. Walker, 514 F. Supp.

14

294, 319-20 (E.D. La. 1981). Therefore, "[n]o potential for vindictiveness ... arises when the government proceeds in the same way on remand as it did in the first trial." United States v. Peoples, 360 F.3d 892, 896 (8th Cir. 2004) (due process is implicated and a presumption of vindictiveness typically arises if, upon remand and reindictment, there is an *increase* in the number or severity of the charges), cert. dismissed, 543 U.S. 1042 (2005).

The petitioner vehemently argues that a criminal complaint does not commence a criminal prosecution, so that the second degree murder information of 1992 constituted the first charging document. According to the petitioner, only if first degree murder had appeared in an *information* prior to 1995 could the prosecutor legitimately charge that offense again upon his retrial after he had prevailed on postconviction review. In the petitioner's view, the complaint charging first degree murder, on which he appeared for a preliminary hearing in county court on July 9, 1992, does not count when determining whether the prosecution increased the severity of the murder charge against him in 1995. I disagree.

In the Progression Order scheduling briefs, I invited discussion of the petitioner's claim of prosecutorial vindictiveness, in particular his arguments that the information alleging second degree murder in the district court constituted the first official charging document in this case, and that he had never entered into a plea bargain in the county court to waive a preliminary hearing in exchange for a reduced charge of second degree murder in the district court. Having reviewed the parties' submissions and the record, I find the following unrebutted material. First, the transcript of the petitioner's initial appearance before the Buffalo County Court on July 9, 1992, reads in pertinent part:

> Prosecutor (Donald Miller): ... [T]he state and the defense have reached a plea agreement whereby the defendant will waive his preliminary hearing and the defendant will be bound over to the District Court on the current charges.[4] The state will file 2nd degree murder and use of a firearm to commit felony charges in the District Court at which time the defendant will be entering a no contest plea to those charges.

---

[4] The current charges at that point were first degree murder and the firearm charge.

15

>Defendant's Attorney (Cary L. Hogg):  That's correct ....

>Judge Graten D. Beavers: Do you understand the nature of the plea bargain, Mr. Caddy?

>Petitioner (Michael T. Caddy): Yes, Your Honor, I do.

After the court explained the petitioner's rights and the first degree murder and firearm charges, the petitioner waived his preliminary hearing and was bound over to district court on those charges, pursuant to the parties' agreement.  At one point Judge Beavers stated: "I will automatically bind you over to District Court for purposes of trial on murder in the first degree and use of a firearm to commit a felony.  Do you understand that?"  The petitioner replied: "I'm a little unclear on just that last part.  The last two sentences."  The judge then explained further, including:  "Mr. Miller [the prosecutor] has indicated that it is the intention of the state after the bindover – after the case has been sent to District Court to reduce Count I to murder in the second degree.  That's not done at this stage, however."  That explanation corresponded to the petitioner's understanding of the proceedings and was satisfactory to him. (See Case No. CR9-92-21, Complete Transcript Vol. I - Testimony, Buffalo County Court Proceedings July 9, 1992, at 1-10.)

Next, the respondent points to the 1995 testimony of Cary L. Hogg, who had represented the petitioner at the 1992 initial appearance.  On July 6, 1995 in Case No. 392-395, District Judge John P. Icenogle held a hearing in the petitioner's first postconviction action.  At that time, Daniel Lindstrom, representing the petitioner, offered documentary evidence, and Donald Miller, representing the state, offered the testimony of Cary L. Hogg. (See BOE, CR95-106, 7/6/95 proceedings before Hon. John P. Icenogle.)    Hogg testified to a plea agreement on July 9, 1992 that the petitioner would waive his preliminary hearing in county court, that he would be bound over to district court on the first degree murder and firearm charges stated in the criminal complaint, that the murder charge would be immediately reduced in district court to second degree murder, and that the petitioner would plead to the firearm and reduced murder charges.  Hogg also testified
that thereafter, he did enter an appearance on behalf of the petitioner in the district court, and the parties carried out the plea agreement. (See BOE, CR95-106, 7/6/95 proceedings

16

before Hon. John P. Icenogle at 9-12, 16-17.)

Thus, on July 29, 1992, in district court, the petitioner entered pleas of no contest to second degree murder and guilty to the firearm charge. The court accepted the pleas, finding no plea bargain (as to the second degree murder and firearm charges). (See BOE, Journal Entry dated July 29, 1992, Ex. 3 to 11/17/97 proceedings.) As Hogg speculated in the 1995 hearing (see BOE, CR95-106, 7/6/95 proceedings before Hon. John P. Icenogle at 17-19), the district court, when accepting the petitioner's plea to second degree murder in 1992, had not been informed of the prior bargain in county court as to the first degree murder charge.

Because it is obvious from the record that Count I originated as a first degree murder charge in 1992, and that Count I became a reduced charge only because the petitioner agreed to enter a plea to second degree murder, no presumption of prosecutorial vindictiveness arises from the prosecutor's decision to charge the same offense again on remand in 1995. Then, just as he had in 1992, the petitioner chose again to plead to second degree murder in 1995. No inference of prosecutorial vindictiveness arises from the foregoing facts. Because of the agreement spelled out in the 1992 county court transcript and in Mr. Hogg's 1995 testimony, the distinction between a criminal complaint and an information does not change the conclusion that this was a first degree murder case from its inception, reduced only because of the petitioner's plea bargains.

III.
## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment guarantees that an accused shall have "the Assistance of Counsel for his defense." U.S. Const. amend. VI. "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate ... and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." Mickens v. Taylor, 535 U.S. 162, 166 (2002), *citing* Strickland v. Washington, 466 U.S. 668, 685-86 (1984).[5]

---

[5]But see 28 U.S.C. § 2254(i): "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." Thus, claims based on ineffective

17

In addition, although the U.S. Constitution imposes on the states no obligation to provide appellate review of criminal convictions, states which offer such appellate review must appoint counsel to represent indigent defendants in their first appeals as of right. Halbert v. Michigan, 125 S.Ct. 2582, 2586-94 (2005). The Due Process and Equal Protection Clauses of the Constitution require the courts to afford a criminal appellant pursuing a first appeal as of right the minimum safeguards necessary to make that appeal adequate and effective. Halbert v. Michigan, 125 S.Ct. at 2586-87; Smith v. Robbins, 528 U.S. 259, 276 (2000); Evitts v. Lucey, 469 U.S. 387, 392 (1985).

Pursuant to the test articulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), a habeas petitioner must show both (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. If counsel's performance was not deficient or if the petitioner suffered no prejudice, the court need not address the other part of the test. See, e.g., Williams v. Locke, 403 F.3d 1022, 1025 (8th Cir. 2005) ("we need not ask whether [the] lawyer's performance was deficient if we can clearly determine that no prejudice resulted from [the] lawyer's alleged error"). See also Whitehead v. Dormire, 340 F.3d 532, 537 (8th Cir. 2003) ("a court deciding an ineffective assistance claim need not address both components of the inquiry if the defendant makes an insufficient showing on one"). Accord Siers v. Weber, 259 F.3d 969, 974 (8th Cir. 2001), cert. denied, 534 U.S. 1138 (2002).

In this case, the element of prejudice is missing. Each time the petitioner raised a valid claim of error by the court or counsel, he received a new trial or appeal (e.g., omission of malice in the information, appellate counsel's failure to perfect a timely appeal, inadequate advice at sentencing hearing, indeterminate sentencing on Count I). In

---

assistance of counsel in postconviction proceedings and counsel's failure to point out constitutional error by a state court during postconviction review are not cognizable in a federal habeas corpus action. See, e.g.,See, e.g., Coleman v. Thompson, 501 U.S. 722, 752-53 (1991) ("There is no constitutional right to an attorney in state post-conviction proceedings .... Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings .... "); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir.) (a claim regarding an infirmity in state postconviction proceedings "is collateral to appellant's conviction and detention, and is therefore not cognizable in a 28 U.S.C. § 2254 petition"), cert. denied, 495 U.S. 936 (1990).

addition, because the petitioner's claim regarding the facial unconstitutionality of Neb. Rev. Stat. § 28-304(1) and his claim of prosecutorial vindictiveness fail for the reasons stated in this Memorandum and Order, the petitioner suffered no prejudice from the failure of any attorney to pursue those arguments.

## IV.
## MULTIPLE JUDGES

The petitioner contends that two district judges "presiding intermittently yet participating contemporaneously violates Due Process ...." (Filing no. 1 at 8.) Over the course of this case, several state judges within the same district, at one point acting contemporaneously, ruled on aspects of the petitioner's case.

Neb. Rev. Stat. § 24-312 sets forth the general principle that, in Nebraska, "[t]he district judges may interchange and hold each other's court." The rest of § 24-312 establishes rules by which district judges may sit in each other's districts by temporary appointment or otherwise.[6]

In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). See also Taylor v. Bowersox, 329 F.3d 963 (8th Cir. 2003), cert. denied, 541 U.S. 947 (2004). "A state's interpretation of its own law is virtually unreviewable by a federal court." Id., 329 F.3d at 968. Accord Davidson v. Bowersox, 288 F.3d 1076 (8th Cir.), cert. denied, 537 U.S. 925 (2002). "It is not within the prerogative of a federal habeas court to question a state court's interpretation of its state's law...." Id., 288 F.3d at 1078.

This court is compelled to respect state procedural rules. That the State of Nebraska permits district judges within the same district to stand in for each other without the filing of an affidavit or other formalities is a matter of state law which this court cannot

---

[6]For example: "Whenever it shall appear by affidavit, to the satisfaction of any district judge in the state, that the judge of any other district is unable to act, on account of sickness, interest, or absence from the district or from any other cause, the judge to whom application may be made shall have power to make any order or do any act relative to any suit, judicial matter, or proceeding or to any special matter arising within the district where such vacancy or disability exists which the judge of such district court could make or do."

undermine or annul. The petitioner has not specified any prejudice suffered as a result of the challenged procedure, and the U.S. Constitution does not compel the petitioner's release or retrial because two judges acted on aspects of his case contemporaneously at one point.

V.

### STATEWIDE CONSPIRACY TO VIOLATE THE PETITIONER'S RIGHTS

This claim is procedurally defaulted and unsupported.

Accordingly, the Petition for Writ of Habeas Corpus filed by Michael T. Caddy, is denied, and judgment will be entered accordingly. On a personal note, I wish to convey my admiration for the depth of Mr. Caddy's comprehension of the complex legal issues in this case. In my view, the law does not favor Mr. Caddy, and for that reason, he has not prevailed in this court, notwithstanding his articulate and thoroughly researched presentations.

THEREFORE, IT IS ORDERED:

1. That the Petition for Writ of Habeas Corpus filed by the petitioner, Michael T. Caddy, is denied;

2. That the petition and the above-entitled case will be dismissed with prejudice; and

3. That judgment will be entered in accordance with this Memorandum and Order.

October 2, 2006.    BY THE COURT:

s/ *Richard G. Kopf*
United States District Judge